**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil** | ) ) ) ) ) | **Case No. 06 C 4485** |
| _____ | ) | |
| **MARCEL FLEISCHMANN, and EDUARDO V. MORTARI, JR.,** | ) ) | |
| **Petitioners,** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **v.** | ) | |
| **MCDONALD'S CORPORATION,** | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 1782(a), Petitioners Marcel Fleischmann and Eduardo V. Mortari, Jr. applied for discovery from McDonald's Corporation for use in two Brazilian lawsuits. McDonald's objects. In addition, McDonald's moved to seal the application. For the reasons stated herein, the application for discovery is granted, the motion to seal is denied, and discovery shall proceed under the limitations imposed by this order.

## I. BACKGROUND FACTS

### A. BRAZILIAN LITIGATION

McDonald's Comercio de Alimentos Ltda. ("McCal") is a Brazilian, wholly-owned subsidiary of McDonald's Corporation ("McDonald's") whose headquarters are in the Court's district. Until May 2005, McCal employed Marcel Fleischmann ("Fleischmann") as its Chief Executive Officer and Eduardo V. Mortari, Jr. ("Mortari") (collectively, "Petitioners") as its Financial Director.

Before Petitioners were fired, McCal hired a consulting company, RPN Consultoria, Comercio e Representacoes, Ltda., ("RPN"), to help McCal with a tax issue. McCal allegedly used RPN to bribe the Secretário of the Brazilian Internal Revenue Service ("Brazilian IRS") for a favorable tax ruling. The Office of the Federal Prosecutor of the Federal District of Brasilia sued McCal, Fleischmann, Mortari, the Secretário, and other persons, but not McDonald's, over the alleged bribe ("Federal Lawsuit").

Shortly after the Federal Lawsuit was filed, McCal fired Petitioners "for cause," claiming that Petitioners obstructed and lied to McCal investigators and the Brazilian IRS. Petitioners contend, however, that McCal fired them to shield McCal and McDonald's from Brazilian and American authorities. Because Petitioners were fired "for cause," McCal denied them severance pay and other benefits.

Fleischmann sued McCal in the 68th Labor Court of the Capital of São Paulo and Mortari sued McCal in the 72nd Labor Court of the Capital of São Paulo (singularly, or collectively, the "Labor Court"). They are each seeking a declaration that they did not commit a serious offense justifying their dismissals for cause. They also seek damages from McCal including severance pay and other benefits. In their claims, Petitioners contend that McDonald's approved the hiring of RPN and that McDonald's has hired other consulting companies to lobby and bribe the governments of Brazil and other Latin American countries.

At Fleischmann's request, the Labor Court issued a Confidentiality Order in his case on February 22, 2006. After Petitioners filed their Application for Discovery in this Court, McCal sought a Confidentiality Order for Mortari's case in the Labor Court. The Labor

Court denied McCal's request on September 25, 2006. Fleischmann's trial is in the latter stages and the parties anticipate a ruling soon; Mortari's trial is scheduled to begin before 2007.

**B.      PROCEDURAL POSTURE**

On August 18, 2006, Petitioners filed in this Court an Application for an Order for Discovery for Use in Proceedings in a Foreign Tribunal (the "Application"). The Application seeks discovery under 28 U.S.C. § 1782(a). Specifically, it seeks interrogatories, document production, and depositions of McDonald's employees. The subject matter it seeks to discover is wide, and includes personnel files, the decision to fire Petitioners, McDonald's termination policies, franchise issues, policies concerning hiring consulting companies or lobbying firms, the scope of authority that McDonald's delegated to Petitioners, tax issues, employee benefits, compliance with specific American laws, accounting audits, insurance claims, and the retention of RPN. The Application includes a declaration, translated from Portuguese, by José Augusto Rodrigues Júnior ("Rodrigues"), the Brazilian attorney representing Petitioners in the Labor Court, which contains facts about the cases and legal analysis of Brazilian law.

McDonald's included in its response a declaration, translated from Portuguese, by Arnaldo Pipek ("Pipek") and Jose Cassio de Barros Penteado Filho ("Cassio"), the attorneys representing McCal in the Labor Court; it contains facts about the cases and legal analysis of Brazilian law. McDonald's also included the translated and untranslated Labor Court orders related to the confidentiality requests. When Petitioners replied to the response, they

3

included a second declaration and translation from Rodrigues that contained additional facts and legal analysis. Petitioners also attached a sworn affidavit from Keith S. Rosenn, a University of Miami School of Law professor, which described Professor Rosenn's expertise on Brazilian law and contained an analysis of Brazilian laws in the context of Brazilian history.

On October 11, 2006, McDonald's filed a brief in support of its Motion to Seal Petitioner's Application and to File Further Documents Under Seal with this Court. McDonald's included a second declaration and translation from Pipek and Cassio, which contained additional facts and legal analysis. Petitioners filed a response opposing the motion. In addition to its reply brief, McDonald's provided the declaration, translated from Portuguese, by Marcelo Pimental ("Pimental"), an attorney in Brazil, and third declarations from Pipek and Cassio, which analyze Brazilian law.

Oral arguments were heard by the Court on October 31, 2006, and November 15, 2006.

## II. APPLICATION FOR AN ORDER FOR DISCOVERY

Petitioners' Application for an Order for Discovery was made pursuant to 28 U.S.C. § 1782(a). The Court will examine the purpose and history of the statute, the statutory requirements the Application must meet before a court may grant discovery, and the factors a court should consider when deciding whether to use its discretion to grant the Application. The statute states:

The district court of the district in which a person resides or is found may order

him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

## A.     PURPOSE AND HISTORY OF THE STATUTE

The statute's twin aims are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241**,** 252 (2004) (internal quotation marks and citation omitted).

Through legislative changes, the statute has allowed more liberal discovery over time. *See, e.g.,* S. Rep. No. 1580 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 ("The proposed revision of section 1782 . . . clarifies and liberalizes existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States."). The first version of the statute, in 1855, authorized a foreign court to send a letter rogatory through diplomatic channels to ask an American court to examine a witness. *Intel*, 542 U.S. at 247. Through a series of at least five legislative

5

changes, those requirements morphed into the statute we have today: the form of the request may now be a letter rogatory or an application; the assistance sought expanded from examination of a witness to include tangible evidence and taking testimony; the request may now come from a tribunal or an interested party; and, the scope of covered proceedings was expanded to include any foreign or international tribunal, including criminal investigations. *Id*. at 247-49.

## B.    STATUTORY REQUIREMENTS

There are four required elements in 1782(a): (1) the requestor is a foreign tribunal, international tribunal, or an interested party; (2) the discovery is sought from a person residing or found in the district of the district court; and (3) the discovery is for use in a proceeding (4) in a foreign or international tribunal.[1]  As discussed below, Petitioners have satisfied all four elements.

McDonald's concedes three of the elements.  As plaintiffs in the Labor Court, Petitioners are interested parties; McDonald's is found in the Court's district; and the Labor Court is a foreign tribunal. The parties disagree whether the discovery is "for use in a proceeding." The parties not only disagree whether the facts suggest that the discovery sought is "for use in" the Labor Court, but also disagree about what the legal standard is for this element.  McDonald's requests this Court to deny the discovery because the Labor Court

---

[1]Some courts evaluate the last two elements at the same time.  *See In re Microsoft Corp*., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006).  *Intel* makes it clear that "for use in" and the proceeding type may both require close analysis.  *See* 542 U.S. at 257-63. This Court therefore treats them as separate elements.

would have denied the discovery if the materials were in Brazil. Alternatively, McDonald's asks this Court to require that any material sought be admissible in the Labor Court. For the reasons below, the Court rejects both standards and adopts a standard based on Federal Rule of Civil Procedure 26(b)(1). Once the Court applies this standard, it is clear that the 1782(a) request meets the "for use in" statutory requirement.

### 1. Foreign-Discoverability Not Required

McDonald's requests the Court to deny the Application because Fleischmann did not seek leave of the Labor Court before initiating this Application and because the Labor Court does not permit the forms of discovery requested. These arguments fail because *Intel* specifically says that there is no foreign-discoverability rule.

Until *Intel*, there was a circuit split over whether the type of discovery sought in the United States under 1782(a) must be discoverable if it were located in the jurisdiction of the foreign tribunal. *Intel*, 542 U.S. at 259-60. The Supreme Court resolved the split by holding that "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Id*. at 260.

### 2. Foreign Admissibility Not Required

McDonald's contends that "for use in" requires the discovery sought here to be admissible in Brazil, but has not cited any case law supporting this requirement. McDonald's advances three reasons the Labor Court will not admit the materials discovered here: (1) since Fleischmann's trial is nearly over, the discovery could not be admitted in his case; (2)

since Mortari's case has progressed past the point where he could designate new documents or witnesses, the Labor Court would likely not allow him to introduce materials gathered here; and (3) since Brazilian courts primarily direct proof-gathering, this extrajudicial proof-gathering would likely not be admissible in the Labor Court. This Court need not analyze these three reasons individually because the Court holds that 1782(a) does not impose a foreign-admissibility rule.

The Supreme Court resolved the circuit split over the foreign-discoverability rule in *Intel* but did not directly address whether there is a foreign-admissibility rule. *Intel* does, however, provide guidance that counsels against a foreign-admissibility rule, as discussed below. Furthermore, no lower court has required a foreign-admissibility rule and some courts have specifically rejected one. The Ninth Circuit, for example, announced that the court had "previously rejected a requirement regarding admissibility in the foreign tribunal" in the appeal that lead directly to the Supreme Court's *Intel* decision. *Advanced Micro Devices, Inc., v. Intel Corp.*, 292 F.3d 664, 668 (9th Cir. 2002); *see also John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 138 (3d Cir. 1985) ("Nor can concern for the ultimate admissibility of the discovered material be argued as a limit on section 1782 orders."); *In re Asta Medica, S.A.*, 794 F. Supp. 442, 447 n.9 (D. Me. 1992) ("Only the foreign tribunals, and not this court, will ultimately determine admissibility."), *rev'd on other grounds*, 981 F.2d 1 (1st Cir. 1992);[2] *In re Ministry of Legal Affairs of Trinidad and Tobago*, 117 F.R.D. 177,

---

[2]When the District Court held that there was not a foreign-admissibility rule in 1782(a), it also held that there was not a foreign-discoverability rule. The First Circuit reversed the case and

179 (S.D. Fla. 1987) ("As stated by the Third Circuit, a district court is not to predict the admissibility of discovered evidence in foreign tribunals.") (*quoting John Deere*, 754 F.2d at 137), *aff'd on other grounds*, 848 F.2d 1151 (11th Cir. 1988); *In re Letters Rogatory From the Supreme Court of Ontario, Canada*, 661 F. Supp. 1168, 1175 (E.D. Mich. 1987) ("[I]t is not for [this Court] to make a substantive ruling as to the admissibility or inadmissibility of this sort of testimony in a criminal prosecution in another country.").  While these cases were decided before *Intel*, they are all consistent with its logic.

In *Intel*, the Supreme Court rejected a foreign-discoverability rule as a matter of statutory construction, noting that Congress included a shield only for privileged material, and holding that "[i]f Congress had intended to impose such a sweeping restriction [of foreign-discoverability] on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect." 542 U.S. at 260 (internal quotation marks omitted).  The same logic applies to a foreign-admissibility rule because 1782 is also silent as to whether foreign admissibility is required.

A second reason against a foreign-admissibility rule, also based on statutory construction, is that some types of non-trial proceedings, which are included in 1782, must necessarily include inadmissible materials.  *See Intel*, 542 U.S. at 259 (holding that 1782(a) applies to many types of non-trial proceedings including civil, administrative, and criminal investigations); *In re Tokyo District*, 539 F.2d at 1219 (noting that some inadmissible

_____

announced a foreign-discoverability rule but did not directly address foreign-admissibility.

evidence may be used in the preliminary stages of a criminal case, just as American grand juries may use evidence that would be inadmissible at trial).  Furthermore, the statute treats criminal and non-criminal proceedings identically because it says "*including* criminal investigations." 28 U.S.C. § 1782(a) (emphasis added).  The Supreme Court in *Intel* held that the 1996 amendment to 1782(a) that added "criminal investigations conducted before formal accusation" was Congressional confirmation that 1782(a) should provide a broad range of discovery.  542 U.S. at 259.

The third reason against a foreign-admissibility rule is that courts should avoid construing foreign law.  Section 1782(a) "does not direct United States courts to engage in comparative analysis*"* because comparisons are "fraught with danger" and "is slippery business." *Intel,* 542 U.S. at 263*; see also John Deere*, 754 F.2d at 137 ("[A] district court is not to predict the admissibility of discovered evidence in foreign tribunals.").  By definition, discovery under this statute is a collateral issue to the foreign proceeding.  *In re Asta Medica*, 794 F. Supp. at 446.  Therefore, American courts should avoid complex, costly, and inefficient issues such as determining the admissibility in a foreign court of a specific piece of evidence for a specific case.  In addition, one purpose behind the statute was "to improve and promote international discovery in litigation." *In re Trinidad and Tobago*, 117 F.R.D. at 178.  "If the situation were reversed, this Court would certainly prefer to interpret United States law rather than have a foreign tribunal sit in judgment."  *Id*.  To improve and promote international discovery, American courts should treat foreign law the way American courts want foreign courts to treat American law: avoid determining foreign law whenever

possible.

This is reinforced when one considers what a court must go through to construe foreign law. In the instant case, this Court has five translated declarations from four different Brazilian lawyers, an affidavit from an American law professor, translated and untranslated orders from the Labor Court, and hundreds of pages of Brazilian civil procedure – in Portugese. When faced with its own dueling experts, another American court wisely noted that "the battle of experts witnessed in this case is compelling evidence for abstention and deference." *Id.* at 180. A collateral issue such as discovery should rarely call for the amount of expert evidence that is usually necessary to interpret foreign law. It is self-evident that the most competent court to decide if materials gathered here are admissible in a foreign court is that same foreign court. *John Deere*, 754 F.2d at 138 ("The Canadian tribunal must necessarily decide the use to which such evidence is put."); *In re Trinidad and Tobago*, 117 F.R.D. at 178 ("Foreign tribunals are far more competent to decide issues of their own making than are United States courts."); *In re Supreme Court of Ontario*, 661 F. Supp. at 1174 ("The admissibility or inadmissibility of evidence is . . . a matter solely for the Canadian Judicial authorities.").

Finally, *Intel* recognized that Congress liberalized 1782(a) over the years. 542 U.S. at 260. Several courts have held that a foreign-admissibility rule is inconsistent with the history of liberalizing the statute. *John Deere*, 754 F.2d at 135 ("The liberal intent to provide judicial assistance whether or not reciprocity exists has been acknowledged as a primary statutory goal since section 1782's inception."); *In re Asta Medica*, 794 F. Supp. at 443 ("I

find that the statute reflects a congressional judgment in favor of liberal disclosure and does not require an American judge to parse foreign law.").

This Court holds that the history of the statute, the case law, and the prudent tendency of American courts to avoid construing foreign law support the plain meaning that "for use in" does not require that the discovery be admissible in the foreign proceeding.

### 3. "For Use In" Standard

Thus far, the Court has observed that "for use in" does not have a foreign-discoverability nor a foreign-admissibility requirement, but that leaves "for use in" without an affirmative standard, giving the Court the opportunity to examine the issue. The Court needs an affirmative standard because Petitioners seek materials on a broad range of topics, and without an affirmative standard it is difficult to be sure that the discovery sought is "for use in" the Labor Court. To that end, the best standard to use is one that courts already use under the Federal Rules of Civil Procedure to manage discovery.

While no court has articulated an affirmative standard (other than the foreign-discoverability standard which was rejected in *Intel*), the Third Circuit stated the following when it rejected a foreign-admissibility rule:

> The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute. Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application.

*In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). The reference to the Federal Rules signals

to the courts that discovery may be as broad and liberal as the Federal Rules allow. Furthermore, as a practical matter, the standards and tests under the Federal Rules are well developed, which helps to meet 1782's goal of efficiency. *See Intel*, 542 U.S. at 252. Therefore, the best standard is one rooted in our own discovery process. This Court holds that "for use in" mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action.

To be perfectly clear, the Court specifically excludes from the standard the sentence in Rule 26(b)(1) that reads: "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1). To require an applicant to show that discovery is reasonably calculated to lead to evidence admissible in the foreign proceeding would be tantamount to a foreign-admissibility rule. The reasons above that counsel against a foreign-admissibility rule are equally applicable to a "foreign-admissibility-lite" rule.

Prior to *Intel*, many courts used the foreign-discoverability rule as the standard of "for use in." After *Intel*, while considering a 1782(a) application, the District Court for the Southern District of New York noted that "[t]he information that [the applicant] seeks would be directly relevant to its defense of [the foreign] suit." *In re Servicio Pan Americano De Proteccion, C.A.*, 354 F. Supp. 2d 269, 273 (S.D.N.Y. 2004). This case supports the standard articulated here because the court equated relevance, the measure under Rule 26(b)(1), with "for use in."

The Court now applies this standard to the instant case. In the Labor Court, Petitioners seek to prove that McDonald's participated in the decision to fire them, that the reasons McDonald's has stated for firing them are pretextual, and that McDonald's has treated them differently from other similarly-situated employees. Requested topics such as Petitioners's personnel files and the reasons for the decision to fire Petitioners are clearly related to these claims. Therefore, the materials are "for use in" within the meaning of the statute, and all of the statutory requirements have been met.

## C. DISCRETIONARY FACTORS

If an application meets the statutory requirements, the statute does not require the court to grant the application, but grants the court discretion. *Intel,* 542 U.S. at 255. Three factors bear consideration in the exercise of this discretion. *Id*. at 264. "First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* Second, the court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.* Specifically, the court may consider if the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."[3] *Id*. at 264-65. Third, the court may reject requests that are "unduly intrusive

---

[3] Some district courts have separated these two sentences into two different factors. *E.g.*, *Advanced Micro Devices, Inc., v. Intel Corp.,* 2004 WL 2282320, at *2-3 (N.D. Cal. 2004). It is

or burdensome." *Id*. at 265.

**1. McDonald's is Not a Participant in the Foreign Proceeding**

The first factor recognizes that nonparties to a foreign proceeding, especially nonparties that are not found in the jurisdiction of the foreign proceeding, are often difficult for those proceedings to reach directly. *Id*. at 264. To assist foreign courts, American courts should grant applications seeking discovery from nonparties for use in the foreign proceedings.

---

impossible to determine if an applicant is attempting to circumvent proof-gathering restrictions, however, without examining "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Accordingly, this Court will treat circumvention as an example of the wider factor. It appears that at least one other court agrees with this formulation. *In re Microsoft Corp.*, 2006 U.S. Dist. LEXIS 32577, at *10-14 (D. Mass. 2006).

McDonald's is not a party in the Labor Court. Its wholly-owned subsidiary, McCal, is the party. McDonald's contends that this case is similar to *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004). In that case, the applicants were party to a class-action in Germany against a German corporation, and the applicants sought discovery under 1782(a) from the American attorneys of the German corporation. The Second Circuit affirmed that a law firm representing a client was identical to the client "for all intents and purposes." *Id*. at 85. Since the German corporation was already a party to the foreign proceeding, the court had discretion to deny the application. *Id*.

McDonald's believes that the difference between McCal and McDonald's is merely "nominal" and anything addressed to McDonald's should be viewed as addressed to McCal, and therefore, the Court should consider McDonald's a party in front of the Labor Court. This logic fails because McDonald's and McCal are two separate legal entities and McDonald's is merely the shareholder of McCal. McDonald's has not shown that it is a party before the Labor Court; nor has it shown that the Labor Court can order it to respond to discovery. *See Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.,* 384 F. Supp. 2d 45 (D.D.C. 2005) (holding that the court cannot require a wholly-owned American subsidiary to force its foreign parent corporation to submit to discovery). This factor supports granting the Application.

## 2. Petitioners Are Not Circumventing Any Labor Court Restrictions

McDonald's contends that this 1782(a) Application is an attempt to circumvent the Brazilian proof-gathering process because Petitioners did not ask a Brazilian court for this discovery first and because the Confidentiality Order precludes Fleischmann from seeking discovery here without leave of the Labor Court. These arguments lack merit.

"Relying on the plain language of the statute, this Court has also refused to engraft a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *In re Euromepa S.A.,* 51 F.3d 1095, 1098 (2d Cir. 1995) (internal quotation marks omitted). To require that applicants first attempt to obtain the discovery from the foreign court "would virtually nullify the statutory provision that 'interested persons' may apply for discovery orders." *John Deere*, 754 F.2d at 136. Congress designed the statute to provide efficient and fair assistance to interested parties engaged in foreign proceedings. The statute does not require parties to first seek the discovery in the foreign tribunal. Nor is the Application an attempt to circumvent the Confidentiality Order because the Confidentiality Order does not extend to foreign discovery (see Section III.A., *infra*).

McDonald's suggests that Petitioners' failures to first seek this discovery in the Labor Court is somehow similar to the facts in *Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 WL 2282320 (N.D. Cal. 2004). On remand from the Supreme Court, the district court denied Advanced Micro Devices's ("AMD") discovery request because, in part, the European Commission proceeding ("EC") had expressly denied AMD's discovery request. *Id*. at *3.

Thus, AMD's 1782(a) application sought discovery that the EC had already denied. That has not happened in the instant case. McDonald's has not made this Court aware of a Labor Court ruling denying the discovery Petitioners now seek against McDonald's.

McDonald's also suggests that this case is similar to *In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006). In that case, the EC possessed and relied on documents from Microsoft's competitors when it issued a Statement of Objections charging that Microsoft was not complying with an earlier order from the EC. *Id.* at 190. The EC scheduled a hearing concerning the Statement of Objections and Microsoft asked the EC to provide Microsoft with all of the documents that were used to compile the Statement of Objections. *Id.* Then, without waiting for a reply from the EC, Microsoft made a 1782(a) discovery request seeking the same documents from its competitors in the United States. If the EC had denied the request and Microsoft was able to obtain them through 1782(a), Microsoft would have circumvented the EC proof-gathering process. The instant case is different. First, Petitioners are not pursuing parallel discovery requests hoping that one of them will pay off. Second, the materials sought here are not already in the possession of the Labor Court.

McDonald's lastly contends that the Labor Court will not be receptive to materials discovered here because the request was not made by letter rogatory. McDonald's does not cite any material that supports this interpretation of Brazilian law. In the declaration provided by McDonald's, Pimental contends that it is unlikely that the Labor Court will use the discovery, but he stops short of saying that all foreign discovery must be conducted by letters rogatory. On the other hand, Article 5(II) of the Brazilian Constitution, suggests that

only an explicit law or ruling can preclude foreign discovery: "No one shall be compelled to do or refrain from doing something except by force of law."  Professor Rosenn also cites American cases that support his observation that since the Brazilian letter rogatory process is slow, parties are instead using 1782(a).  Furthermore, even McCal's Brazilian lawyers admit that a party may introduce evidence that comes into its possession after the trial has started. Therefore, letters rogatory cannot be the only acceptable procedure for foreign discovery.

McDonald's has not shown that the Labor Court would be unreceptive to materials discovered here under 1782(a).  This is in stark contrast to both *Intel* and *In re Microsoft* where the EC explicitly stated that they did not want the help of the American courts.  *Intel*, 542 U.S. at 265 ("The European Commission has stated in amicus curiae briefs to this Court that it does not need or want the District Court's assistance.");  *In re Microsoft,* 428 F. Supp. 2d at 194 ("[T]he Commission has explicitly stated that it opposes the discovery sought by Microsoft and is not receptive to U.S. judicial assistance.").  The Court finds that this Application is not an attempt to circumvent Brazilian proof-gathering restrictions and that this factor supports granting the discovery request.

### 3. The Discovery Sought is Not Unduly Intrusive or Burdensome

Finally, the court may reject the application if the discovery sought is unduly intrusive or burdensome. If a court orders discovery, then the Federal Rules of Civil Procedure may govern discovery, so a court may use Rule 26 and other rules to protect respondents from specific requests that are unduly intrusive or burdensome. This factor directs the court to look at the requests in the aggregate to decide whether they are unduly intrusive or burdensome.

The materials that Petitioners seek are relevant to the claims and defenses before the Labor Court. McDonald's objects to some specific requests and the Court limits the scope of the discovery in Section III below. McDonald's should be able to collect the documents sought by Petitioners without undue burden. This factor therefore supports granting the discovery request. The factors all support granting the request, and the Court grants the Application.

### III. SCOPE OF DISCOVERY

Once the court has decided to grant discovery, the discovery is managed by the Federal Rules of Civil Procedure unless the court orders otherwise. 28 U.S.C. § 1782(a). The statute authorizes the court to order a person "to give his testimony or statement or to produce a document or other thing." *Id.* This court interprets this language to include depositions and document production, but not interrogatories.

The Court orders the parties to follow the Federal Rules of Civil Procedure except where they are clearly not applicable (e.g., initial disclosures under Rule 26(a)(1)) and with the following restrictions:

First, Petitioners are only seeking materials in the United States; McDonald's shall not be obligated to produce materials located outside of the United States.

Second, discovery is limited to the following topics: (1) McDonald's Corporation's decision to terminate Petitioners, or McDonald's Corporation's explanation of its decision to terminate Petitioners; (2) McDonald's Corporation's knowledge of, or approval of, the retention and work of RPN; and (3) McDonald's Corporation's policies or codes of conduct concerning the kinds of activities in which Fleischmann or Mortari are alleged to have engaged.

Third, any materials discovered through this order may only be used in the two Labor Court lawsuits brought by Petitioners, specifically docket numbers 030132000506802007 and 0298020050720200, respectively.

Fourth, McDonald's stipulates that all documents it produces are authentic; therefore, depositions to establish the authenticity of the produced documents are unnecessary.

Fifth, when McDonald's thinks that requested material is protected by privilege, then McDonald's shall use the applicable Federal Rules to object to the request.

Sixth, all documents shall be produced on an "as found" basis, but no later than December 7, 2006.

Seventh, the request in the Application for two depositions is denied without prejudice

because Petitioners have not decided whether depositions will be necessary. Since McDonald's is a corporation, Petitioners should generally notice their deposition requests by topic using Rule 30(b)(6).

The court may order that discovery be taken "before a person appointed by the court." 28 U.S.C. § 1782(a). The purpose and function of this person are the same as an officer named under Federal Rule of Civil Procedure 28. The parties have agreed to perform discovery without the assistance of an officer or to stipulate to a court reporter, if necessary.

## IV. MOTION TO SEAL

McDonald's Corporation's motion to seal these proceedings asserts that the Confidentiality Order in Fleischmann's suit is "good cause" under Federal Rule of Civil Procedure 26(c). There is a strong presumption in the United States that documents filed in court be open to the public. *See e.g. Union Oil Co. v. Leavell,* 220 F.3d 562, 567-68 (7th Cir. 2000) (settlement agreement filed with court under seal made public because the "tradition that litigation is open to the public is of very long standing"). As discussed above, the Court is to avoid construing foreign law, and therefore will not attempt to determine whether the Labor Court's order or Brazilian law purport to limit the principles of openness in U.S. courts under these circumstances. Nor need the Court determine whether principles of comity should over-ride our domestic aversion to secrecy in our courts. McDonald's motion to seal is denied. The Court does order, however, that the discovery be used only in connection with Petitioners' two Labor Court cases.

## V. CONCLUSION

An Application for discovery under 1782(a) includes neither a foreign-admissibility

rule nor a foreign-discoverability rule. The scope of discovery is substantially the same as Federal Rule of Civil Procedure 26(b)(1). Petitioners met all four of the statutory requirements and all three of the discretionary factors that support granting the discovery request. Therefore, this Court exercises its discretion and grants the request. The Federal Rules of Civil Procedure and the specific limitations in this order shall govern the discovery. The pleadings in this action will not be under seal.

**For the reasons set forth in this opinion, Petitioners's request for discovery is granted, McDonald's motion to seal is denied, and discovery shall proceed according to the limitations imposed by this Memorandum Opinion and Order and the oral rulings made by the Court on October 31, 2006 and November 15, 2006, to the extent not inconsistent with this Opinion. All sealed documents shall be placed in the public file forthwith. All discovery provided by reason of the Application shall be used only in connection with the two cases filed by Petitioners in the Brazilian Labor Court.**

**SO ORDERED THIS 6th DAY OF DECEMBER, 2006.**

_Morton Denlow_

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

**John Thomas Moran**                    309 West Washington Street
John T. Moran & Associates              Suite 900

Chicago, IL 60606

Counsel for Petitioners

**Mark L.  Shapiro**
**Christopher W.  Carmichael**
Holland & Knight LLC
131 South Dearborn Street
30th Floor
Chicago, IL 60603

**Jonathan Christian Bunge**
Kirkland & Ellis LLP (Chicago)
200 East Randolph Drive
Suite 6100
Chicago, IL 60601

Counsel for Respondents