# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLIOIS
# EASTERN DIVISION

| | |
|---|---|
| In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil <br><br> MARCEL FLEISCHMANN, and EDUARDO V. MORTARI, JR., <br> Petitioners, <br><br> v. <br><br> MCDONALD'S CORPORATION, <br> Respondent. | Case No. 06 C 4485 <br><br> Magistrate Judge Morton Denlow |

## MEMORANDUM OPINION AND ORDER

Petitioners, Marcel Fleischmann and Eduardo V. Mortari, Jr., have moved to compel Respondent, McDonald's Corporation, to produce documents pursuant to this Court's previous order granting Petitioners' 28 U.S.C. § 1782 application for discovery. *Fleishmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020 (N.D. Ill. 2006). McDonald's objects to the motion to compel, and further asks that the discovery proceedings be terminated. For the reasons stated below, the motion to compel is granted in part and denied in part, and the current proceedings are terminated.

### I. BACKGROUND FACTS.

The factual background of this case is set forth in detail in a prior opinion of this Court. *Fleishmann*, 466 F. Supp 2d at 1023-25. In that proceeding, the Court granted Petitioners' application for discovery, and required McDonald's to produce documents

located in the United States relating to: 1) McDonald's decision to terminate Petitioners, or McDonald's explanation of its decision to terminate Petitioners; 2) McDonald's knowledge of, or approval of, the retention and work of RPN Consultoria, Comercio e Representacoes, Ltda. ("RPN"); and 3) McDonald's policies or codes of conduct concerning the kinds of activities in which Fleischmann or Mortari are alleged to have engaged. *Id*. at 1033.

McDonald's has produced approximately 1500 pages of documents, and confirmed that it produced all records in its possession that were required by the Court's order. PX 1.[1] McDonald's further provided a privilege log, claiming attorney-client and/or work-product privileges for 78 documents that it did not produce. RX I. Petitioners now contend that McDonald's has violated the Court's order by failing to produce all of its documents relating to the three categories outlined by the Court, by providing a privilege log that inadequately claims attorney-client and work-product privileges, and by producing many documents in redacted form without any explanation for the redactions. McDonald's refutes each of Petitioners' contentions and further asks that the Court, in its discretion, end the current proceedings. Oral arguments were held for the current motion to compel on June 21, 2007. The Court has since performed an *in camera* review of the documents appearing on McDonald's privilege log that Petitioners believe are not protected.

## II. MCDONALD'S HAS COMPLIED WITH THIS COURT'S DISCOVERY ORDER.

---

[1] Petitioners' exhibits are abbreviated as PX; Respondent's exhibits are abbreviated as RX.

Petitioners claim that McDonald's failed to produce documents in its possession that relate to each of the three categories set forth in the Court's order, and Petitioners ask that McDonald's be compelled to produce those documents.

Petitioners argue that McDonald's did not produce any documents that pertain to why Petitioners were fired, and very few documents produced even mention Petitioners' termination. One document that was produced is a written communication from McDonald's Senior Vice President and President of McDonald's Latin America, to various senior executives of McDonald's, informing them of Petitioners' dismissal. That document explains that "we have proceeded with the decision we made yesterday . . . . Tonight we terminated Marcel Fleischmann . . . . And Eduardo Mortari . . . ." PX 2. Petitioners argue that this document demonstrates that there must have been documents and interviews that were considered prior to making the decision to terminate Petitioners' employment, none of which were produced by McDonald's. Similarly, Petitioners point to a group of emails between McDonald's Human Resources department regarding placing restrictions on Petitioners' stock options. PX 3. From the context of the emails, Petitioners argue that there must have been preceding emails that McDonald's has not produced. Petitioners finally allege that "It is simply inconceivable that a decision was made to terminate the CEO of [McCal], and there are no documents reflecting the basis for this decision." Pet'r Mot. at 8.

Petitioners argue that most of what McDonald's produced regarding the second category was copies of documents that were produced in Brazil, rather than relevant

3

documents from McDonald's records. For example, Petitioners point to a 2004 "clearance memorandum" produced by McDonald's which lists payments made to RPN. This document is apparently a copy of a document that Petitioners had filed in Brazil. Petitioners point out that no clearance memoranda were produced for relevant preceding or subsequent years, a fact that Petitioners find "unfathomable" considering the information that was produced. Petitioners also note that no documents were produced regarding Fleischmann's authority, as CEO of McCal, to enter contracts for the payment and hiring of consultants.

In response to the third category of documents to be produced by McDonald's, Petitioners consider it insufficient that McDonald's merely presented copies of its generic "Standards of Business Conduct" and "McDonald's Policy on Business Practices," both of which are broad in scope with little relevance to the case at hand. Petitioners argue that "It is hard to believe that a worldwide company like McDonald's would have no documents relating to policies or codes of conduct on such issues [that are relevant to this case.]" Pet'r Mot. at 11.

Despite Petitioners' dissatisfaction with the documents produced, McDonald's argues, and the Court agrees, that McDonald's has complied with the Court's discovery order. McDonald's has stated that it completed its production pursuant to the Court's order, and there is insufficient basis on which to question the good faith of that statement.

Petitioners admit that McDonald's and McCal are separate legal entities, and that McDonald's is merely a shareholder in McCal. In light of this distinction, McDonald's

4

explains that it has "produced documents of the type that one would expect McDonald's to possess in the United States concerning the events that took place in Brazil." Resp't Br. at 4. Considering that the events giving rise to this dispute took place in Brazil, and that McCal, not McDonald's, is the defendant in the Brazilian lawsuit, McCal may have far more documentation of greater relevance in Brazil than can be found with McDonald's in the United States. McDonald's is not required to retrieve relevant documents that are solely in McCal's possession.

As explained above, based on documents produced by McDonald's, as well as Petitioners' own notions of what is conceivable for McDonald's to possess, Petitioners argue that McDonald's has discoverable documents in its possession that have been withheld. The evidence and speculation on which Petitioners base their belief is simply insufficient to support their motion to compel. *See, e.g., Retail Experts Consulting & Mgmt., Inc. v. Premium Retail Servs., Inc.,* 2006 WL 1719564, at *4 (N.D. Ill. June 15, 2006) (denying a motion to compel and holding that there was no reason to doubt plaintiff's representation that it had no documents responsive to discovery requests, despite defendant's belief and evidence to the contrary); *Cohn v. Taco Bell Corp.*, 1995 WL 519968, at *4 (N.D. Ill. 1995) (holding that materials produced by the parties, and defendant's assertion that plaintiffs were withholding discoverable documents, did not suggest that plaintiffs were in fact withholding relevant documents). McDonald's has spent an extraordinary amount of time and money to comply with the Court's order. The Court finds no basis upon which to find that McDonald's

explains that it has "produced documents of the type that one would expect McDonald's to possess in the United States concerning the events that took place in Brazil." Resp't Br. at 4. Considering that the events giving rise to this dispute took place in Brazil, and that McCal, not McDonald's, is the defendant in the Brazilian lawsuit, McCal may have far more documentation of greater relevance in Brazil than can be found with McDonald's in the United States. McDonald's is not required to retrieve relevant documents that are solely in McCal's possession.

As explained above, based on documents produced by McDonald's, as well as Petitioners' own notions of what is conceivable for McDonald's to possess, Petitioners argue that McDonald's has discoverable documents in its possession that have been withheld. The evidence and speculation on which Petitioners base their belief is simply insufficient to support their motion to compel. *See, e.g., Retail Experts Consulting & Mgmt., Inc. v. Premium Retail Servs., Inc.,* 2006 WL 1719564, at *4 (N.D. Ill. June 15, 2006) (denying a motion to compel and holding that there was no reason to doubt plaintiff's representation that it had no documents responsive to discovery requests, despite defendant's belief and evidence to the contrary); *Cohn v. Taco Bell Corp.*, 1995 WL 519968, at *4 (N.D. Ill. 1995) (holding that materials produced by the parties, and defendant's assertion that plaintiffs were withholding discoverable documents, did not suggest that plaintiffs were in fact withholding relevant documents). McDonald's has spent an extraordinary amount of time and money to comply with the Court's order. The Court finds no basis upon which to find that McDonald's

has not complied with its discovery obligations. Accordingly, Petitioners' motion to compel further discovery within the three established categories is denied.

### III. MCDONALD'S PRIVILEGE LOG IS APPROPRIATE IN LIGHT OF THE COURT'S IN CAMERA REVIEW.

Petitioners next argue that the privilege log provided by McDonald's, which cites the attorney-client and work-product privileges for several withheld documents, is insufficient, and that the claimed privileges should therefore be waived.

A privilege log must meet minimum requirements in its components and level of detail. A log "shall describe things not produced or disclosed in a manner that, without revealing information in itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). For each document, the log should identify: 1) the name and capacity of the author and all recipients of the document; 2) a description of the subject matter of the document in sufficient detail to determine if legal advice was sought or revealed, or if the document was made for the primary purpose of litigation; 3) the date of the document and any attachments; 4) the type of document; 5) the privilege asserted; and 6) the Bates number. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992).

In light of an *in camera* review of the documents that Petitioners suspected to be non-privileged, the Court finds that McDonald's log provides adequate information. As explained above, Rule 26 mandates that in asserting a privilege a party must provide sufficient detail, but "without revealing information in itself privileged or protected." Fed. R. Civ. P. 26(b)(5).

A party need not give information to the point that the privilege is waived or becomes meaningless. Without revealing privileged information, McDonald's addressed each necessary element of a privilege log. Furthermore, McDonald's provided additional detail regarding the documents on the privilege log in response to Petitioners' current motion, addressing each of Petitioners' questions and concerns surrounding the privileges asserted. Even if McDonald's privilege log had failed to meet the required elements initially, the situation was remedied by the information provided in the response. Additionally, the context given in the privilege log sufficiently allowed the Court to determine the nature of the documents during it's *in camera* review, and assess whether each document was privileged. "The purpose of a privilege log is to enable the opposing party and the Court to evaluate the applicability of the asserted privilege . . ." *FMC Corp v. Trimac*, 2000 WL 1745179, at *1 (N.D. Ill. Nov. 27, 2000). Because the Court has been able to perform this *in camera* review, and through such a review determine the applicability of the given privileges, it is unnecessary for McDonald's to provide any further information.

As the Court has determined that McDonald's has provided sufficient information regarding the withheld documents, waiver of the asserted privileges, as was requested by Petitioners, is clearly inappropriate. Even if the Court had determined that the privilege log was inadequate in this case, however, waiver of the privileges would be improper. "Waiver of a privilege is a serious sanction reserved for cases of unjustified delay, inexcusable conduct, bad faith, or other flagrant violations. . . . Some courts have decided against waiver

where there have been . . . minor procedural violations, [or] good faith attempts at complying . . ." *Applied Sys., Inc. v. N. Ins. Co. of N.Y.*, 1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997). There is no reason to question McDonald's good faith effort in creating its log, and had McDonald's failed to provide a sufficient level of detail, it would be an overly harsh result to waive McDonald's privileges.

**IV. BASED ON THE COURT'S IN CAMERA REVIEW, MCDONALD'S HAS PROPERLY CLAIMED THE PROTECTION OF THE ATTORNEY-CLIENT PRIVILEGE AND/OR WORK-PRODUCT DOCTRINE FOR 77 OF THE 78 DOCUMENTS LISTED ON THE PRIVILEGE LOG.**

Petitioners next claim that several of the documents referred to in McDonald's privilege log are in fact discoverable, as the elements of the given privileges are not satisfied. The Court has reviewed these documents *in camera* to determine whether they are protected by the asserted privileges. These documents have been divided into categories that share similar characteristics and reasons for their ruling of privileged or not privileged. The categories are set forth below along with the Court's ruling for the category, an explanation for the ruling, and examples by Bates number of documents that fit into the category.

## A. THE ATTORNEY-CLIENT PRIVILEGE

The elements of the attorney-client privilege are: 1) Where legal advice of any kind is sought 2) from a professional legal adviser in his capacity as such, 3) the communications relating to that purpose, 4) made in confidence 5) by the client, 6) are at his instance permanently protected 7) from disclosure by himself or by the legal adviser, 8) except the protection be waived. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Courts have further held that while the privilege applies to legal advice between an attorney and client, it does not cover business advice, regardless of whether the advice comes from an attorney. *See, e.g., Rehling v. City of Chicago,* 207 F.3d 1009, 1019 (7th Cir. 2000). Petitioners make the general allegation that several of the documents withheld by McDonald's for the attorney-client privilege should be produced, as they relate to the business decision to terminate Petitioners.

While McDonald's admits that the decision to terminate Petitioners was in fact ultimately a business decision, McDonald's claims that the privileged documents reflect attorney-client communications regarding McDonald's investigation into the allegations surrounding its Brazilian subsidiary, and for most of the documents in this case for which the attorney-client privilege is claimed, the Court's *in camera* review has affirmed this assertion. *Upjohn v. United States* involved a company counsel's factual investigation to determine the extent of alleged illegal activity and "questionable payments" that had occurred at one of the company's foreign subsidiaries. 449 U.S. 383, 386 (1981). When the Internal Revenue

9

Service sought discovery of documents created during that investigation, the Supreme Court held that the documents reflected attorney-client communications regarding the alleged activities, and were in fact protected by privilege. *Id.* at 394. Many of McDonald's documents regarding the decision to terminate Petitioners similarly reflect attorney-client communications that occurred during McDonald's investigation into McCal.

Furthermore, the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389. If the attorney-client privilege could not be asserted in a case such as this, in which a company's counsel investigates alleged illegal activity at a subsidiary, open communication between counsel and employees would be compromised, as employees' statements could later be used against them. The quality of legal advice would suffer, as less relevant information would be available to attorneys.

**B.     THE WORK-PRODUCT DOCTRINE**

Petitioners similarly claim that several of the documents withheld by McDonald's on the basis of work-product doctrine should be produced. The work-product doctrine protects: 1) "documents and tangible things otherwise discoverable"; 2) prepared "by or for another party or by or for that other party's representative"; 3) "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). *See also United States v. Nat'l Ass'n of Realtors*, 2007 WL 1518914, at *1 (N.D. Ill. May 22, 2007) ("The work product doctrine protects materials

prepared by an attorney in anticipation of litigation"). Furthermore, work-product documents fall into two categories. "Opinion" work-product reveals mental impressions or opinions of an attorney, and is not discoverable. On the other hand, non-opinion work-product documents are discoverable, if the requesting party can demonstrate a "substantial need" for the materials in order to prepare his case, and an inability to obtain the substantial equivalent of the documents by some other means without "undue hardship." Fed. R. Civ. P. 26(b)(3).

Petitioners argue that several of the documents withheld by McDonald's on the basis of the work-product doctrine should be produced because the documents were not created in anticipation of litigation. In its privilege log, McDonald's referred to several documents as pertaining to "Brazilian litigation" or "Brazilian public civil action." RX I. As has been noted, McDonald's and McCal are two separate legal entities, and as such, Petitioners maintain that McDonald's cannot claim that documents were created in anticipation of litigation simply because McCal, rather than McDonald's, was anticipating litigation.

McDonald's explains that the work-product doctrine was claimed for those documents, however, because the investigation into the "Brazilian litigation" was done by McDonald's in order to prepare to defend itself from litigation. Furthermore, *Upjohn* again involves similar facts. While Upjohn's investigation was in regard to allegations surrounding a foreign subsidiary, the Supreme Court held that documents created by Upjohn's counsel during that investigation were protected by the work-product doctrine. *Upjohn*, 449 U.S. at

401. McDonald's argues that many of its documents are similarly protected by the work-product doctrine, and this Court's *in camera* review supports that assertion.

Petitioners further argue that even if McDonald's documents are subject to the work-product doctrine, those documents that are not "opinion" work-product should be produced due to Petitioner's substantial need and inability to obtain any equivalent without undue hardship. The Court is not persuaded that Petitioners are unable to obtain substantially equivalent information in the course of the Brazilian litigation. Thus, the motion to compel discovery of non-opinion work-product documents on the basis of substantial need is denied.

C.  **RULINGS ON SPECIFIC DOCUMENT CATEGORIES**

The Court makes the following rulings on the various categories of documents:

**1.  Translated Documents Created at the Direction of an Attorney (Log entries 1, 27-28, 30, 33, 36-38, and 66) are Privileged.**

Several of McDonald's log entries reflect translated documents created at the direction of an attorney in preparation of litigation. These documents are therefore properly protected by the work-product doctrine. *See Brunetti v. Federal Bureau of Investigation*, 357 F. Supp. 2d 97, 110 (D.D.C. 2004) (holding that a letter translated into Italian qualified as work-product, as it was prepared by an attorney in anticipation of litigation). *See also In re Air Crash Disaster Near Warsaw, Poland on May 9, 1987*, 1996 WL 684434, at *2 (E.D.N.Y. Nov. 19, 1996) (holding that because English translations were prepared in anticipation of litigation at the direction of attorneys, those documents were work-product). The Court now similarly holds that because McDonald's translated documents were created at the direction

of attorneys in anticipation of litigation, and thus the elements of the work-product doctrine are satisfied, those documents are properly protected. The motion to compel this category of documents is denied.

### 2. Witness Statements, Testimonies, and Interviews (Log entries 2-5, 29, and 31) are Privileged.

These documents all reflect attorneys' notes from witness interviews. The elements of work-product are fulfilled, as these documents were created by attorneys in anticipation of litigation, and reflect those attorneys' mental impressions and thoughts about the case. The attorney-client privilege also properly applies, as these documents necessarily reflect attorney-client communications for the purpose of the attorney providing sound legal advice. The motion to compel documents falling in this category is denied.

### 3. Documents Reflecting Legal Advice Regarding Petitioners' Stock Options (Log entries 7-11, 15-16, 46-51, and 58-59) are Privileged.

This category includes spreadsheets and numerical data on Petitioners' stock options, accompanied by electronic communications regarding the attached data. As such, these documents are protected by both the attorney-client privilege and work-product doctrine. As for the attorney-client privilege, these documents reflect requests for information from attorneys to the client for the purpose of providing legal advice, and are therefore protected. Alternatively, regarding the work-product doctrine, the documents were prepared upon the request of the attorneys in preparation for litigation, as evidenced by the electronic

communications, and thus meet the elements of the doctrine. The motion to compel discovery of these documents is therefore similarly denied.

### 4. Business Documentation of Petitioners' Stock Options (Log entry 6) is not Privileged.

Unlike the items in the category above, this document is a freestanding spreadsheet containing data on Petitioners' stock options. It appears to be merely a record of information, created in the normal course of business. The attorney-client privilege is not applicable, as there is no accompanying communication, and no request for legal advice. Similarly, as for the work-product doctrine, there is no evidence to suggest that this document was created in anticipation of litigation, or for an attorney. The document is therefore not privileged, and the motion to compel this document is granted.

### 5. Attorney's Written Notes (Log entries 12, 24-26, 34, 52-54, 57, and 66-67) are Privileged.

This category includes attorneys' handwritten and/or typed notes and impressions of matters involved in the Brazilian lawsuit. The requirements of the work-product doctrine are easily satisfied, as these documents were created by attorneys and reflect thoughts and impressions of the Brazilian litigation. Alternatively, the attorney-client privilege is applicable to many of the documents, which include attorneys' notes and legal impressions based on communications made with the client. The motion to compel these documents is denied.

### 6. McDonald's Written Communications (Log entries 17-19, 32, 35, 37-38, 57, 62-63, 65, 68-69, and 73-74) are Privileged.

This category includes communications such as emails and facsimiles between client personnel and their legal advisors. The attorney-client privilege is properly asserted as many of the documents portray legal questions and/or advice. The work-product doctrine similarly applies, as these documented communications between the client and lawyer are clearly created by or for the attorney, and many of the communications are in regards to the current litigation. The motion to compel these documents is denied.

### 7. McDonald's "Standards of Business" Compliance Forms (Log entries 20-21 and 64) are Privileged.

These documents reflect forms filled out for McDonald's legal department by McCal, regarding their compliance with McDonald's various business standards. It appears that these forms were requested by McDonald's legal department for the purpose of offering legal advice and thus are properly protected by the attorney-client privilege. The motion to compel these documents is therefore denied.

## V. MCDONALD'S NEED NOT PRODUCE THE REDACTED PORTIONS OF PRODUCED DOCUMENTS.

Petitioners further argue that McDonald's has not established a legal basis for withholding redacted portions from certain documents, and that those documents should therefore be reviewed by the Court *in camera* to determine their relevance to this case. Pet'r Mot. at 26. As McDonald's points out, however, the Court has only required McDonald's to produce documentation relating to the three previously mentioned categories. McDonald's has stated that any redacted portions of documents were not included in discovery because

they are not relevant to those three issues, and there is no reason for the Court to question this determination by McDonald's. McDonald's response to the current motion further explains the irrelevance of redacted portions of specific documents. Petitioners have an inadequate basis on which to suspect that that redacted portions of those documents are in fact responsive to the three categories of production required by the Court, and therefore no *in camera* review of these documents is necessary.

## VI. MCCAL'S INTENT TO CALL FACT WITNESSES IN THE BRAZILIAN LITIGATION DOES NOT RESULT IN WAIVER OF MCDONALD'S ASSERTED PRIVILEGES.

McCal has indicated that it plans to call Maria Leggett, McDonald's General Counsel for Latin America, and Sergio Alonso, the President of McCal, as fact witnesses in the Brazilian litigation. Upon learning this, Petitioners filed a supplemental brief claiming that McDonald's has waived the protection of the attorney-client privilege and/or work-product doctrine for any documents associated with Leggett or Alonso. Petitioners based this claim on the assertion that the testimony of these witnesses will reveal privileged communications. As the testimony has not yet occurred, Petitioners' claim is merely speculative. A witness's testimony results in waiver only if that testimony reveals the content of privileged communications. *Lorenz v. Valley Forge Assurance Co.*, 815 F.2d 1095, 1099 (7th Cir. 1987). Because neither Leggett's nor Alonso's testimony has transpired, and thus the content of privileged communications has not been revealed, no waiver has occurred. The motion to compel on the basis of waiver is denied.

## VII. TERMINATION OF THE CURRENT PROCEEDINGS IS APPROPRIATE.

As a final matter, McDonald's asks the Court, in its discretion, to terminate the current proceedings. McDonald's believes that Petitioners have merely used this section 1782 proceeding to "harass" McDonald's and gain settlement leverage against McCal. Considering portions of this opinion, in which the Court has agreed that Petitioners had valid concerns, it would be inconsistent to deem this motion a mere "harassment" or illegitimate petition. As discovery has now been completed in this case, however, the current proceedings can properly be terminated.

## VIII. CONCLUSION.

McDonald's has sufficiently responded to the Court's order to produce documents within the three named categories, and there is inadequate basis for questioning McDonald's statement that it has completed discovery in accordance with the Court's order. In light of the Court's *in camera* review, McDonald's privilege log contains sufficient detail, and no waiver of the asserted privileges has occurred. Furthermore, the *in camera* review by the Court has determined that 77 of the 78 documents in McDonald's privilege log are protected from discovery by the attorney-client privilege and/or work-product doctrine. Additionally, McDonald's need not produce redacted portions of documents for *in camera* review, as there is no basis for speculating that the redacted portions of their documents will be responsive to this Court's discovery order. Moreover, McDonald's has not waived any privilege on the basis that it plans to call specific fact witnesses in the Brazilian litigation. Finally, the Court

will end the current proceedings, despite believing that Petitioners have not used this 1782 proceeding as a means to harass McDonald's.[2]

**For the reasons set forth in this opinion, Petitioners' motion to compel discovery is granted in part and denied in part, and McDonald's motion to end the current proceedings is granted. McDonald's shall produce Document number 6 on the privilege log to Petitioners within fourteen days of this decision.**

**SO ORDERED THIS 24th DAY OF JULY, 2007.**

*Morton Denlow*

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

---

[2] McDonald's alleges as an initial matter that Petitioners have not complied with Local Rule 37.2, and that Petitioners' motion should therefore be denied. The Court has decided the motion on the merits, and needs not address this issue. Nonetheless, the parties are reminded of the importance of Rule 37.2.

**Copies sent to:**

Jonathan C. Bunge
David Grassmick
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Mark L. Shapiro
Christopher W. Carmichael
Holland & Knight LLP
131 S. Dearborn Street
Suite 3000
Chicago, IL 60603

**Counsel for Defendants**

John Thomas Moran, Jr.
THE MORAN LAW GROUP
309 West Washington Street
Suite 900
Chicago, IL 60606

**Counsel for Plaintiffs**